## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 06-254 (GK)** |
| | : | |
| **MICHAEL SCOTT** | : | **Sentencing Date: August 27, 2007** |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this Memorandum in Aid of Sentencing in the instant case. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration of no less than the mid-point of the applicable Guidelines range of 121-151 months.[1]

### I.      BACKGROUND

During the early morning hours of August 2, 2006, members of Metropolitan Police Department were traveling northbound in the unit block of B Street, S.E., when they observed a black Hyundai Sonata bearing Virginia tags, being driven by the defendant, make a right turn from East Capitol Street onto southbound B Street, while traveling at a very high rate of speed. The defendant was driving so fast as he tried to negotiate the turn that the vehicle fish-tailed and struck the curb of the median strip. Police initiated a traffic stop on the vehicle and, when the defendant was unable to produce his driver's license, police arrested him for failure to produce a license. Incident to the defendant's arrest, police searched the passenger compartment of the vehicle. Within

---

[1] See section II.B., infra.

the console area, underneath the gearshift module, police found a fully-loaded .45 caliber semi-automatic pistol, a substantial amount of crack cocaine inside three plastic sandwich bags, and 93 small ziplocks containing heroin. The vehicle was not registered to the defendant, but he had rented it from Avis/Budget Rent A Car several days prior. The total weight of the crack was 125.9 grams, and the heroin weighed 8.4 grams. The magazine of the gun had the defendant's fingerprint on it. The defendant possessed both the crack and the heroin with the specific intent to distribute it to others. At the time of his arrest, the defendant had over $1,700 in his pocket.

II.    **SENTENCING CALCULATION**

    A.    Statutory Minimum/Maximum

The minimum term of imprisonment for the offense of Unlawful Possession With Intent to Distribute Fifty Grams or More of Cocaine Base, a Class A felony, is 10 years, while the maximum period that may be imposed is life confinement. In addition, the maximum fine is $4,000,000. See Presentence Report ("PSR") at ¶¶ 57, 70. The maximum term of imprisonment for the offense of Unlawful Possession of Heroin is 20 years, and the maximum fine is $1,000,000. Id.

    B.    United States Sentencing Guidelines ("USSG") Calculation

The PSR writer in this case, U.S. Probation Officer Tennille Losch, has correctly calculated the Defendant's total offense level to be 32 and his criminal history category to be I. PSR ¶¶ 15-26, 30. Thus, under these calculations, the Defendant's Guidelines range for imprisonment for the above offenses is 121-151 months. PSR ¶¶ 58.

    C.    The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles

2

articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Booker</u>, 543 U.S. at 261.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u> at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable <u>per se</u>. Not only is a sentence within the Guideline range reasonable <u>per se</u>, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in <u>Booker</u> recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  <u>See</u>, <u>e.g.</u>, <u>id.</u> at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); <u>id.</u> at 250 (same) ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction.") (emphasis supplied); <u>id.</u> at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); <u>id.</u> at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.   This is so, said the court in <u>United States v. Wilson</u>, 350 F. Supp.2d 910 (D. Utah 2005) – the day after <u>Booker</u> was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines

4

or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at 950. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

## III. DEFENDANT SHOULD BE SENTENCED TO A TERM OF INCARCERATION AT AT LEAST THE MID-POINT OF THE APPLICABLE GUIDELINES RANGE OF 121-151 MONTHS

The government respectfully recommends that the Court sentence the Defendant to a term of incarceration of no less than the mid-point of the applicable Guidelines range of 121-151 months. Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above. In addition, it would be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to, *inter alia*: "[1] reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense; [2] afford adequate deterrence to criminal conduct; and [3] protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1) and (2).

With regard to the first factor noted above, the nature and circumstances of the offense, the defendant's illegal conduct here is extremely serious and represents a very real and present danger to the community. The evidence in this case demonstrates that the defendant was engaged in the business of trafficking substantial amounts of crack and heroin while he was armed with loaded pistol. Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this city and of violence against its citizens, the defendant's conduct here is especially reprehensible, and his punishment should reflect and communicate to the defendant that drug trafficking, especially while armed, will not be tolerated in this jurisdiction. A sentence of at least the mid-point of the applicable Guidelines range would certainly reflect the seriousness of this conduct. Indeed, such a sentence would certainly address the destructive effects that drug trafficking and its attendant violence have on the community.

Relating to the second factor, the history and characteristics of the defendant, at the outset it should be noted significantly that this incident occurred at a time when the defendant, less than four months prior, had been arrested and charged with offenses virtually identical to the instant case and, indeed, he was awaiting trial for those offenses. Specifically, on April 10, 2007, the defendant was arrested by members of MPD following a traffic stop in the 1000 block of M Street, S.E., Washington, D.C. In plain view inside the vehicle the defendant was driving police observed quantities of heroin and crack, as well as marijuana. In addition, as in the instant case, the defendant possessed the drugs under circumstances indicating an intent to distribute to others. The defendant had been released by the court and allowed to remain in the community to await trial when the instant case occurred. Indeed, the fact that he would dare to repeat his illicit conduct less than four months later, particularly while under court supervision and in the face of an imminent trial, makes

plain that the defendant has no regard for the rules of the court and the laws of this jurisdiction.

Moreover, these circumstances, especially when considered with the defendant's numerous other

arrests, see PSR ¶¶ 31-39, suggest a strong tendency on his part to engage in unlawful behavior.

Consequently, the circumstances demonstrate that the defendant is not likely to be rehabilitated in

the future.  In summary, given the facts and circumstances of this case, the defendant's criminal

history, and the backdrop against which this offense occurred,  a sentence of incarceration of no less

than the mid-point of the applicable Guidelines range of 121-151 months is both reasonable and

appropriate.  Finally, such a sentence would not only protect the public from the defendant's criminal

behavior, but would it also "afford adequate [general] deterrence to criminal conduct."  18 U.S.C.

§ 3553(a)(2).

## IV.    CONCLUSION

In summary, the advisory Guidelines range in this case provides for a reasonable sentence,

one that takes into account the relevant sentencing factors set forth in 18 §3553(a).[2]  The government

---

[2] It is the government's position that 18 U.S. C. § 3553(a)(2)(1), which directs that the sentencing court consider the "the nature and circumstances of the offense and the history and characteristics of the defendant," should not be read to mean that the sentencing court should take into account all of the defendant's personal characteristics in imposing a sentence of incarceration. Congress, in enacting the Sentencing Reform Act, specifically prohibited certain personal characteristics from being considered in sentencing.  Thus, sentences cannot be based on a defendant's race, sex, national origin, creed or socioeconomic status.  See 28 U.S.C §944(d). Other characteristics can be taken into account only to the extent they are relevant.  Id.  Congress specifically directed that the Commission assure that the Guidelines reflected "the general inappropriateness" of considering certain factors, including the defendant's family ties and responsibilities, and community ties, in recommending terms of imprisonment.  28 U.S.C. § 994(e).

Thus while Congress contemplated that a defendant's age, family ties and responsibilities, community ties, and similar factors may be appropriately considered with respects to incidents of sentencing other than incarceration, for example, the length and type of community service, the amount of a fine, or the conditions of probation, it recognized that these same factors have no

therefore respectfully requests that the Court impose a sentence of incarceration at no less than the

mid-point of the applicable Guidelines range of 121-151 months, a term of supervised release as

provided by statute, and any other terms and conditions that the Court deems appropriate.

                                        Respectfully,

                                        JEFFREY A. TAYLOR
                                        United States Attorney


                                                /s/
                                        _____
                        By:     Donnell W. Turner
                                Assistant United States Attorney
                                Maryland Bar
                                Federal Major Crimes Section
                                555 4th Street, N.W.  #4235
                                Washington, DC 20001
                                Tel. (202) 305-1419
                                Fax (202) 514-6010

---

place in determining whether and for how long a defendant should be imprisoned.  We recognize
that post-Booker, the Sentencing Guidelines are advisory.  Nevertheless, the Guidelines
provisions with respect to limitations of factors to be considered in imposing sentence clearly
reflect the will on Congress on this issue, see 28 U.S.C. § 994(e), therefore, we respectfully ask
that these factors be given appropriate consideration by the Court.